### MELVILLE v. MISSOURI RIVER, F. S. & G. R. Co.

*(Circuit Court, W. D. Missouri, W. D.    May, 1880.)*

1. MASTER AND SERVANT—DUTY TO EMPLOY SKILLFUL FELLOW-SERVANTS.
    A company employing helpers to its blacksmiths, is bound to see that they are reasonably skillful in that work; but this duty is discharged if the foreman employing them exercised ordinary care therein.
2. SAME—NEGLIGENCE OF FELLOW-SERVANT.
    A blacksmith, injured by the careless blow of a skillful helper, cannot recover from their common master, unless the helper was habitually careless, and that fact was known to the master, and not to the blacksmith.
3. SAME—ACCIDENTS—RISKS OF EMPLOYMENT.
    A servant, injured by a mere accident, incident to the work in which he is employed, cannot recover from his master.

At Law.    Action for damages for personal injuries.

Krekel, J., (*charging jury.*)  The case about to be submitted to you, in the application of the principles which must govern it, is of importance, and deserves, and I have no doubt will receive, careful consideration at your hands.  Melville, the plaintiff in the case, sues the receiver of the Ft. Scott Railroad Company for $10,000 damages on account of injuries received while in the employment of the company as a blacksmith.  The injury for which the damages are claimed is the loss of one eye, which was caused, as alleged by plaintiff, by the unskillfulness of a helper or striker in the defendant company's employ.  The evidence tends to show that Melville, on the 11th day of August, 1876, was engaged upon a piece of blacksmith work in the shop of the defendant company.  His usual striker or helper being absent, and he, Melville, needing help, he rapped upon the anvil in the customary way for help, and one Matoon, a striker or helper of an adjoining fire, stepped up to answer the call.  The piece of iron had to be bent in order to square it.  After having been sufficiently bent over for squaring, a flatter was held over the bent part to be stricken sidewise by the helper so as to bring the bent iron plate to a square.  It is claimed by plaintiff, Melville, that in striking the flatter the helper did it so unskillfully that thereby a piece of iron was detached by the blow, which struck and put out his, plaintiff's, eye.  All of this might be true, as alleged by the plaintiff, and yet the company is not liable unless the striker was unskillful, applying the term "unskillful" to the work for which he was engaged.  If the helper was skillful, and struck a foul blow, or even if an unskillful blow did not cause or contribute to the injury, the consequences of such foul blow must be borne by the plaintiff, and the company is not liable therefor.  All the defendant company is bound to do is to supply a sufficiently skilled striker or helper for the work in hand.  It is not liable for neglect or carelessness of the helper, unless such neglect or carelessness was habitual, and was known, or by the use of reasonable diligence might have been known, to the company, and was unknown to the plaintiff.  The law is that laborers who engage in joint work assume to run all ordinary risks growing out of the occupation and work in which they are engaged, including acts of skillful co-laborers.  There are no complaints of any fault in the tools or appliances furnished by the company.  Three questions are to to be determined by you:  (1) Was the striker or the helper, Matoon, sufficiently skillful for the work in which he was engaged?  (2) Did plaintiff directly or indirectly contribute to the injury?  (3) Was the injury an accident?  The law applicable to these several propositions I will proceed to discuss in the order in which I have stated them.

Whether striking or helping in a blacksmith shop, or work such as has been testified to, is a skilled profession, to be learned by practice, and what amount of skill and practice is required to become a skillful striker, is for you to determine from the evidence.  In trying to arrive at a proper conclusion you will carefully consider the testimony bearing upon the question, and take into consideration, also, the acts of the plaintiff.  The testimony shows that plaintiff had been engaged in different companies' shops for five years before the occurring of the in-

jury complained of. The knowledge he must have had of the work upon which he was engaged, and the amount of skill necessary on part of the helper to aid him; his knowledge of the helpers in the shop who could obey his call; his failing to complain,—all this will be considered by you for the purpose of arriving at the conclusion whether Melville considered such helpers, including Matoon, sufficiently skilled to aid him; for, had he been dissatisfied, he could have quit the service of the company at any time. Much has been said about rules and the grading of mechanics in well-regulated shops, inapplicable in this case. The Ft. Scott Railroad Company had a right to make its own rules and regulations regarding its mechanics and the employment of its hands, and if the manner in which it was done was known to this plaintiff he is supposed to have acquiesced in it, and has no cause of complaint, though such employment and control differed from other similar or like establishments. It was the duty of the defendant company to supply suitable helpers, and the plaintiff had a right, in the absence of knowledge to the contrary, to presume that helpers employed were sufficiently skilled; but this obligation on part of the railroad is fully discharged if ordinary care was exercised by the foreman in the employment of helpers. Of this you are the judge under the testimony. To one thing I desire to call your attention specially, and it is this: That if you find from the testimony that Matoon was sufficiently skillful for the work in which he was engaged, and struck the blow which caused the injury negligently or carelessly, the railroad company is not responsible for the consequences of such neglect or carelessness. The consequences of such acts must be borne, as already stated, by those engaged in the common work.

Passing to the second proposition,—the contributing on part of plaintiff to the injury,—I may dispose of this branch of the case by saying that if you shall find from the testimony that plaintiff, by his own acts, materially contributed towards bringing about the injury complained of, he cannot recover.

I now pass to the third and most important part of the case, and invite your close attention thereto, namely, to the question, was the injury received by the plaintiff caused by an accident? It is for you, under the evidence, to determine whether the injury received by plaintiff was accidental. If accidental, the misfortune must be borne by him upon whom it falls. The law furnishes plaintiff no redress. The theory is that either a scale or a small piece of iron was detached by Matoon's blow from the flatter, which flew into plaintiff's eye, and destroyed it. The flatters and hammers have been described to you. The testimony tends to show that both, when new, are made somewhat rounding on their face; that by the blows both the hammer and flatter are gradually flattened, presenting, after considerable use, ragged edges, pieces of which by use are detached. It further appears from the testimony that the strokes, even when most carefully made by the best of strikers, do not always fall upon the same place on the face of the flatter. You have been told by the witnesses how, after long use, flatters wear down to

near the edge. You must judge from the testimony and experience how many blows it takes to wear out a flatter, the use of flatters generally, the number of injuries similar to the one under consideration occurring, and determine whether what happened was an accident or not. If you come to the conclusion it was an accident, the plaintiff is remediless, and the company not liable.